# SUMMARY REPORT
## CHICAGO POLICE DEPARTMENT

| LOG NO | TYPE | DATE OF REPORT |
|---|---|---|
| 1073693 | CR, U | 14-JUL-2016 |

**INSTRUCTIONS:** SUBMIT ORIGINAL AND 3 COPIES IF ASSIGNED TO SAME UNIT AS ACCUSED. SUBMIT ORIGINAL AND 4 COPIES IF NOT ASSIGNED TO SAME UNIT AS

**TO:**
☐ CHIEF ADMINISTRATOR, INDEPENDENT POLICE REVIEW AUTHORITY
☐ CHIEF, BUREAU OF INTERNAL AFFAIRS

| FROM - INVESTIGATOR'S NAME | RANK | STAR NO | EMPLOYEE NO | UNIT ASSIGNED | UNIT DETAILED |
|---|---|---|---|---|---|
| ABBRUZZESE, WILLIAM | 9182 | | ███ | 113 | |

REFERENCE NOS.(LIST ALL RELATED C.L., C.B., I.R., INVENTORY NOS., ETC., PERTINENT OF THIS INVESTIGATION)

| INCIDENT ADDRESS: 312 W. 115TH ST, CHICAGO, IL 60628 | DATE / TIME: 07-FEB-2015 14:02 | BEAT: 522 |
|---|---|---|

## ACCUSED

| NAME | RANK | STAR NO | EMP NO | UNIT ASSIGNED | UNIT DETAILED | SEX/RACE | DOB | APPOINTED DATE | ON DUTY? | SWORN? |
|---|---|---|---|---|---|---|---|---|---|---|
| GAETA, JAIME | 9161 | 17317 | ███ | 312 | | M / S | ███ 1968 | 13-SEP-1999 | YES | YES |
| MATHEOS, HARRY M | 9165 | 21386 | ███ | 610 | | M / WHI | ███ 1970 | 05-JUN-1995 | YES | YES |

## REPORTING PARTY

| NAME | ADDRESS* | CITY STATE | TELEPHONE | SEX / RACE | DOB / AGE |
|---|---|---|---|---|---|
| MC NAUGHTON, DAVID | RANK: 9796, STAR NO: 120, EMP NO: ███ | | | M / WHI | ███ 1963 / 53 |

## VICTIMS

| NAME | ADDRESS* | CITY STATE | TELEPHONE | SEX / RACE | DOB / AGE |
|---|---|---|---|---|---|
| ███ | ███ | CHICAGO, IL | | M / BLK | ███ 1981 / 35 |

## WITNESSES

| NAME | ADDRESS* | CITY STATE | TELEPHONE | SEX / RACE | DOB / AGE |
|---|---|---|---|---|---|
| DERCOLA, MATT | RANK: 9161, STAR NO: 15740, EMP NO: ███ | | | M / WHI | ███ 1981 / 34 |
| WHIGHAM, JAMES | RANK: 9161, STAR NO: 3462, EMP NO: ███ | | | M / BLK | ███ 1979 / 36 |

* IF CPD MEMBER, LIST RANK, STAR, EMPLOYEE NOS. IN ADDRESS, PAX/BELL IN TELEPHONE BOX.

## ALLEGATIONS

** SEE LAST PAGE FOR INSTRUCTIONS FOR STATING ALLEGATIONS, AND COMPLETING THE REMAINDER OF THE SUMMARY REPORT.

**PLAINTIFF'S EXHIBIT A**

## INSTRUCTIONS FOR THE SUMMARY REPORT
AFTER COMPLETING THE FORM, CONTINUE THE SUMMARY REPORT ON 8 1/2 x 11 INCH WHITE PAPER.

### ALLEGATIONS

In narrative form, state how, when, where, and by whom the complaint was received. State the date, time, and location where the incident occurred, and summarize the complaint. If more than one allegation is made, enumerate each allegation as follows:
   No. 1 (Summarize the allegation)
   No. 2 (Summarize the allegation)

### 2. EVIDENCE

Number and attach all statements, reports, and other evidence gathered, on the lower right hand corner. The Complaint Log number must also be entered on the lower right hand corner of each attachment. Following are numbered (EXAMPLES ONLY).
Attachments:
   No. 1   Face Sheet - Yellow
   No. 2   Letter of complaint from victim
   No. 3   Statement of victim
   No. 4   Statement of witness (give name)
   No. 5   Report of member (give name)
   No. 6   Statement of member (give name)
   No. 7   Progress report of investigator (give name)
   No. 8   Copy of certified letter to reporting party
   No. 9   Copy of Alcoholic Influence Report (accused)
   No. 10  General Offense Case Report, R.D._____
   No. 11  Signed Sworn Affidavit

### 3. INVESTIGATION

In narrative form, indicate the fact-finding processes followed and the information ascertained as a result of the investigation. Whenever reference is made to an attachment, indicate the attachment number.

### 4. FINDINGS

Each allegation must be classified as either of the following:
Unfounded - Exonerated - Not Sustained - Sustained - No Affidavit.

If the classification is "Sustained," indicate the rule number violated, the context of the rule, and how the rule was violated by the member.
Example:  Allegation No. 1. Unfounded
   Allegation No. 1. Sustained - Violation of Rule 12,
   Failure to wear the uniform as prescribed, in that on 27 Feb 84 the accused was found to be wearing a non-prescribed short sleeve shirt.

Even though the original allegation(s) may be Unfounded, etc., the investigation may uncover a violation of serious nature unrelated to the original complaint, in which case disciplinary action should be recommended for the other violation.
Example:  Allegation No. 1. Unfounded
   Allegation No. 2. Not Sustained Other violation: Sustained-Violation of Rule 26, Failure to provide the Department with a current address and telephone number, in that the accused related in his statement that he had moved and obtained a new telephone number and he had failed to provide this information to the Department.

SUMMARY OF PREVIOUS DISCIPLINARY ACTIONS and RECORD OF PREVIOUS COMPLIMENTARY HISTORY
IN SUSTAINED CASES ONLY, copies of the accused member's Summary of Previous Disciplinary Actions and Record of Previous Complimentary History will be included as attachments to the final investigation report. Refer to the General Order entitled "Complaint and Disciplinary Procedures."

### 5. RECOMMENDATION FOR DISCIPLINARY ACTION

One (overall) recommendation for disciplinary action will be made by the investigator. The recommendation will be for all sustained findings; recommendations will not be made for each sustained allegation

Examples:   1. Violation noted, no disciplinary action warranted.
   2. That the accused member be reprimanded.
   3. That the accused member be suspended for days
   4. That the accused member be separated from the Department.

**6. DATE INITIATED:**  (Date complaint was received for investigation)

**7. DATE COMPLETED:** (Date of this report)

**8. ELAPSED TIME:** (Total time, expressed in days)

_____(Investigator)_____
Rank          Name          Star No.          Unit

### 9. APPROVALS
The investigator will initiate the Command Channel Review form (CPD-44. 113-A) by completing the Investigator section.

INDEPENDENT POLICE REVIEW AUTHORITY            Log #1073693/U# 15-02

| | |
|---|---|
| **TO:** | Chief Administrator<br>Independent Police Review Authority |
| **FROM:** | Inv. William Abbruzzese #170 |
| **SUBJECT:** | Log #1073693<br>U #15-002 |
| **REFERENCE:** | RD #HY-143253/Event #1503809109<br>Aggravated Assault to Police Officer |
| **DATE/TIME:** | 07 February 2015 at approximately 1436 hours |
| **INVOLVED OFFICER #1:** | GAETA, Jaime, M/H; Star #17317,<br>Unit 312; Employee No. ▮ DOB: ▮ 1968,<br>DOA: 13 September 1999, On-duty, in plainclothes, in Beat 6724B |
| **OFFICER'S WEAPON:** | Glock; Semi-Automatic 45 CAL; Model 30,<br>4 inch barrel, SER #NWZ056; Chicago Registration #R013047S, FOID #96180253. Fired (3) rounds, Department Issued Ammunition |
| **OFFICER'S INJURIES:** | Non-Fatal; Minor Injury |
| **INVOLVED OFFICER #2:** | MATHEOS, Harry, M/W; Star #18599,<br>Unit 312; Employee No. ▮ DOB: ▮ 1970,<br>DOA: 05 June 1995, On-duty, in plainclothes, in Beat 6724E |
| **OFFICER'S WEAPON:** | Sig Sauer; Semi-Automatic 45 CAL; Model P220,<br>4.4 inch barrel, SER #G367126; Chicago Registration #636395, FOID #57483029. Fired (2) rounds, Department Issued Ammunition |
| **OFFICER'S INJURIES:** | None reported |
| **WITNESS OFFICER #1:** | DERCOLA, Matt, M/W; Star #15740<br>Unit 312; Employee No. ▮ DOB: ▮ 1981,<br>DOA: 29 August 2005, On-duty, in plainclothes, in Beat 6724G |
| **OFFICER'S INJURIES:** | None reported |

3

INDEPENDENT POLICE REVIEW AUTHORITY　　　　　　　　　Log #1073693/U# 15-02

**WITNESS OFFICER #2:** WHIGHAM, James, M/B; Star #3462
Unit 312; Employee No. ▮▮▮ DOB: ▮▮▮ 1979
DOA: 31 July 2006, On-duty, in plainclothes, in Beat 6724I

**OFFICER'S INJURIES:** None reported

**SUBJECT/ VICTIM:** ▮▮▮ DOB: ▮▮▮ 1981,
Address: ▮▮▮ Chicago, IL

**SUBJECT/ VICTIM INJURIES:** Gunshot wounds to the left flank
Transported to Christ Hospital

**SUBJECT/ VICTIM'S WEAPON:** Automobile – 2004 Lincoln Aviator
Illinois Temporary License Plate No. ▮▮▮

**LOCATION:** 310 W. 115th Street (Street)

**TIME OF IPRA NOTIFICATION:** 1447 hours

**TIME IPRA ARRIVED ON-SCENE:** 1530 hours

**IPRA ON SCENE:** IPRA 1st Deputy Chief Administrator Steven Mitchell
IPRA Supervising Investigator Patrick Querfurth
IPRA Investigator William Abbruzzese

**IPRA NOTIFICATIONS:** Chief Administrator Scott Ando
IPRA Director of Public Affairs Larry Merritt

4

INDEPENDENT POLICE REVIEW AUTHORITY                    Log #1073693/U# 15-02

**INTRODUCTION:**

On 7 February 2015, Officer Jamie Gaeta and Officer Harry Matheos fired their weapons at ▮▮▮▮▮▮ as ▮▮▮▮▮ was attempting to flee from them in his Lincoln Aviator. The ensuing IPRA investigation shows that the officers' use of deadly force was in violation of Chicago Police Department Policy.

**ALLEGATIONS:**

It is alleged that on 07 February 2015, at approximately 1436 hours, at the location of 310 West 115th Street, **Officers Jaime Gaeta, #17317** and **Harry Matheos, #21386**:

> 1. Fired their weapons upon ▮▮▮▮▮▮ without justification, as he was attempting to flee and posed no immediate threat, in that they violated General Order 03-02-03, III.

**APPLICABLE RULES:**

Chicago Police Department General Order, GO 03-02-03; Deadly Force

**SUMMARY OF INCIDENT:**

On 07 February 2015, at approximately 1436 hours, Gang Enforcement officers were conducting a narcotics investigation of an individual, now known to be ▮▮▮▮▮ who they had previously identified in prior narcotics transactions. Witness Officers James Whigham, #3462 and Matt Dercola, #15740, were operating their unmarked black Chevrolet Impala when they were directed to make a traffic stop by Officers Jaime Gaeta, #17317 and Harry Matheos, #18599. Upon stopping ▮▮▮▮▮ vehicle in the vicinity of 310 W. 115th Street, Officers Whigham and Dercola approached ▮▮▮▮▮ vehicle and requested his license and insurance, which ▮▮▮▮▮ produced. ▮▮▮▮▮ was then asked to exit his vehicle for reasons of officer safety, but he refused to comply.

At this time, Officers Gaeta and Matheos arrived to assist Officers Whigham and Dercola. Officers Gaeta and Matheos parked their squad car in front of ▮▮▮▮▮ vehicle. Officers Gaeta and Matheos then approached the driver's side of the vehicle and ordered ▮▮▮▮▮ from the vehicle multiple times. ▮▮▮▮▮ again refused to comply and began using his cellular phone. Officers Gaeta and Matheos attempted to forcibly lower the driver's side window as ▮▮▮▮▮ continued to refuse to exit his vehicle. At this time, ▮▮▮▮▮ reversed his vehicle into the path of the witness officers, Whigham and Dercola, but did not make contact with them. ▮▮▮▮▮ vehicle struck the unmarked Chevrolet Impala, causing damage to the front bumper. ▮▮▮▮▮ then accelerated forward towards Officers Gaeta and Matheos, who were in the middle of the street. Officers Gaeta and Matheos fired their service weapons at ▮▮▮▮▮ ▮▮▮▮▮ drove across the median onto the sidewalk, where his vehicle came to rest in front of the All-Star Quick Mart at 319 W. 115th Street, striking a gas line. ▮▮▮▮▮ was taken into custody and transported to Christ Hospital with a gunshot wound to his left abdomen.

5

INDEPENDENT POLICE REVIEW AUTHORITY     Log #1073693/U# 15-02

**INVESTIGATION:**

The **IPRA Preliminary Report** and the **Major Incident Notification Report** essentially related the same information as reported in the Summary of Incident of this report. (Atts. #6, 57)

In his statement to IPRA on 08 February 2015, **Subject** ▇▇▇▇▇ stated that he has been a confidential informant for the Chicago Police Department from 2012 to 2015. On 07 February 2015, ▇▇▇▇▇ was driving his vehicle on 115th Street, a 2004 Lincoln Aviator, when he was stopped by the police. A plainclothes officer, now known to be Officer Matthew Dercola, approached the driver side of his vehicle and asked ▇▇▇▇▇ for his license and insurance, which he provided. Officer Dercola then told ▇▇▇▇▇ to step out of his vehicle. ▇▇▇▇▇ refused to comply because he believed he had done "nothing wrong"[1] and then rolled his window up, leaving it open approximately one inch. ▇▇▇▇▇ used his cellular phone and called his contact at the Chicago Police Department, now known to be Officer Kathleen Schmidt. At the same time, Officer Dercola continued to order ▇▇▇▇▇ to exit the vehicle.

▇▇▇▇▇ stated that Officer Kathleen Schmidt told ▇▇▇▇▇ to give his phone to the officer so that she could speak directly to the officer. A second set of officers, now known to be Officers Jaime Gaeta and Harry Matheos, arrived in an unmarked police SUV and pulled in front of ▇▇▇▇▇ vehicle, essentially blocking him in. ▇▇▇▇▇ attempted to give Officer Dercola his phone, but he refused to take it. At that time, Officer Gaeta approached the door, grabbed onto the driver's side window and attempted to pull it down, causing the window to break. According to ▇▇▇▇▇ after his window was broken, the officers displayed their guns.

▇▇▇▇▇ stated that, at that time, he placed his vehicle into reverse and backed up, striking the unmarked squad car parked behind him. ▇▇▇▇▇ stated that as he backed up, the officers moved away from his vehicle. ▇▇▇▇▇ stated that he then drove forward in an effort to escape and there were no officers standing in front of his vehicle. At that point, the officers began firing at him. ▇▇▇▇▇ further stated that all the officers were standing next to the driver's side of his vehicle and were firing their weapons at the driver's side of the vehicle. According to ▇▇▇▇▇ he was shot in his side and started having difficulty breathing. ▇▇▇▇▇ drove his vehicle across the street and struck a building. ▇▇▇▇▇ exited his vehicle and was subsequently arrested. (Atts. #14-15)

According to **Department Reports,** ▇▇▇▇▇ was arrested on 07 February 2015, at 1436 hours, at 310 W. 115th Street, and charged with several counts of Aggravated Assault to a Peace Officer, Possession of Cannibas, and Criminal Damage to Property. The arresting officers were J. Gaeta, #17317 and H. Matheos, #18599. It is reported that ▇▇▇▇▇ was arrested after attempting to flee and cause bodily harm with his vehicle to Officers Gaeta, Matheos and Dercola. (Atts. #17-19)

According to the **Tactical Response Reports (TRR's),** completed by Officer Gaeta Matheos, Dercola and Whigham; ▇▇▇▇▇ did not follow verbal directions, fled, was an

---

[1] Statement of ▇▇▇▇▇ (Att. 15) Page 7, Line 25

INDEPENDENT POLICE REVIEW AUTHORITY                                    Log #1073693/U# 15-02

imminent threat of battery, attacked with a weapon (vehicle), and used force likely to cause death or great bodily harm with his vehicle. Officers Dercola and Whigham responded with member presence and verbal commands. Officers Gaeta and Matheos responded with member presence, verbal commands and the discharge of their firearms. (Atts. #21, 23, 25, 27)

According to the **Officer's Battery Reports (OBR's),** on the date, time and location of the incident, Officers Gaeta and Matheos were in citizen's dress conducting a narcotics investigation. ▇▇▇ failed to comply with verbal commands and drove his vehicle towards Officers Gaeta, Matheos and Dercola in an attempt to flee arrest. Officer Gaeta sustained a non-fatal minor injury. Officers Matheos, Whigham and Dercola did not sustain any injuries. (Atts. #22, 24, 26, 28)

The **OEMC** and **PCAD reports** were collected and made part of this case file. The transmissions and documents appear generally consistent with the facts contained in the Summary of Incident and accounts of Officers Gaeta and Matheos. Attempts to locate additional independent witnesses from 911 calls were made to no avail. There were no independent 911 callers to this incident. (Atts. #29, 38-39, 41)

The **POD (Police Observation Device) Video Footage** from POD #7241, located at 11458 S. Yale Avenue was obtained and viewed. There was no relevant footage pertaining to this investigation. (Atts. #36-37)

**Surveillance Footage** from **256 W. 115th Street** was obtained and viewed. There was no relevant footage pertaining to this investigation as the cameras filmed on to a side street and bus stop. (Atts. #91-92)

**Surveillance Footage** from **318 W. 115th Street** was obtained and viewed. There was no relevant footage pertaining to this investigation as the cameras filmed into a rear parking lot. (Atts. #93-94)

**IPRA Investigators conducted two separate canvasses,** the first on 08 February 2015 and the second on 16 April 2015, in an attempt to locate additional witnesses and/or evidence. Additional information was not discovered. (Atts. #30, 64)

The **Chicago Fire Department Ambulance Report** documented that ▇▇▇ was found to have a gunshot wound to his left flank. ▇▇▇ was transported to Christ Hospital. (Att. #52)

**Medical Records** from **Christ Hospital** indicated that ▇▇▇ sustained one gunshot wound to his flank. The medical records include a diagram which depicts the bullet wound entry was to ▇▇▇ lower back. (Att. #45)

The **CPD Forensic Services Division Records** (Crime Scene Processing Reports, Video of Scene, Evidence Technician Photographic Records and Inventory Sheets) were obtained and incorporated into this investigation. The firearms of Officers Gaeta and Matheos were recovered and inventoried for further forensic testing. (Atts. #40, 43-44, 58-59, 90).

7

The **CPD Forensic Services Division** processed ▆▆▆▆ vehicle at Pound #4 at the request of IPRA on 06 March 2015. Trajectory rods were placed in defects from apparent fired bullet damage in the vehicle.[2] There were four trajectory rods placed in the defect areas which were identified by Markers labeled A through D and photographed. A trajectory rod identified by Marker A indicated that a bullet appeared to enter almost directly into the driver's side window.



A trajectory rod identified by Marker B shows a bullet entry in the column between the driver's side front and rear doors at an angle traveling from back to front.



A trajectory rod identified by Marker C shows a bullet entry in the driver's side rear door just below the window at an angle traveling from back to front.

---

[2] The examination of defects and holes caused by projectiles from firearms can provide information useful in the reconstruction of a shooting incident. "Shooting Scene Reconstruction," Minnesota Bureau of Criminal Apprehension, available at https://dps.mn.gov/divisions/bca/bca-divisions/forensic-science/Pages/forensic-programs-crime-scene-ssrecon.aspx.

INDEPENDENT POLICE REVIEW AUTHORITY                    Log #1073693/U# 15-02



A trajectory rod identified by Marker D shows that bullet traveled through the driver's side rear window through the driver's seat and toward the front console of the vehicle.

  

Markers were placed and photographed to document where shell casings were recovered at the scene. The location of casings cannot definitively establish the placement of the officers when they fired. The photographs show that the casings were found in and around the space that ▇▇ ▇▇▇▇ vehicle had occupied when stopped between the two police vehicles. It should be noted that the photographs show that the casings were found closer to the vehicle that blocked ▇▇▇▇▇▇▇ vehicle at the rear. (Atts. #55, 58)

**Illinois State Police Forensic Science Laboratory Reports** documented the examination of recovered ballistic evidence, in comparison to the firearms belonging to each officer. Both firearms tested were found to be in proper firing condition. Based upon analysis of ISP Reports and Forensic Reports, it was determined that Officer Gaeta fired three times and Officer Matheos fired two times. The shell casings and fired bullets were compared to the officers' firearms and found to match their respective weapons. Additional ballistic evidence, to include bullet fragments and copper jacketing, was found to be of insufficient condition for comparative examination to either Officer Gaeta's or Officer Matheos' weapon. (Atts. #89-90)

9

INDEPENDENT POLICE REVIEW AUTHORITY                                      Log #1073693/U# 15-02

In her statement to IPRA on 22 April 2015, **Witness Officer Kathleen Schmidt** stated that ▇ was a registered narcotics informant with whom she had worked for the two to three years prior to her statement. According to Officer Schmidt, on 07 February 2015, ▇ contacted her via telephone and told her that he had been stopped by the police and that they wanted him to exit his vehicle, but he was refusing their orders. According to Officer Schmidt, ▇ sounded "very agitated and upset," saying "I don't know why I gotta get out, why do I gotta get outta the car. I don't know why I complied with 'em. I gave 'em my lic, why do I have to get outta the car."[3] Officer Schmidt instructed ▇ several times to exit the vehicle. She also suggested that, after doing so, he should explain to the officers that he was an informant and ask them to call her. Officer Schmidt then heard a muffled noise as if the phone was dropped and then heard ▇ state words to the effect of, "You shot me....Why did you shoot me?"[4] The phone was active for several more seconds and then it was disconnected. (Atts. #65-67)

In his statement to IPRA on 17 February 2015, **Witness Officer James Whigham** stated that he and his partner, Officer Dercola, received a call via cellular phone from Officer Gaeta. Officer Gaeta told Officer Whigham that he had observed a male, now known to be ▇ conduct a possible hand-to-hand narcotics transaction out of his vehicle, a Lincoln Aviator, and he wanted the vehicle stopped. Officer Gaeta gave the location of the vehicle, which Officers Whigham and Dercola located and stopped at approximately 318 W. 115th Street.

Officer Whigham approached the passenger side of the vehicle, while Officer Dercola approached the driver's side. According to Officer Whigham, ▇ was uncooperative and was "verbally yelling"[5] towards Officer Dercola. Officer Dercola continued to order ▇ to exit the vehicle, but he refused and began talking with someone on his cellular phone. Officer Whigham related that ▇ continued to sit in his vehicle with the driver's side window slightly rolled down. A few moments later, Officers Gaeta and Matheos pulled up and parked their unmarked squad car in front of ▇ vehicle, at a diagonal angle. Officers Gaeta and Matheos exited their squad car and approached the driver's side of the vehicle and ordered ▇ to exit.

At this point, Officer Whigham relocated to the rear driver's side tire. Officer Whigham heard the vehicle switch into gear. Officer Whigham stepped away from the vehicle and observed Officer Gaeta holding on to the driver's side window. ▇ reversed his vehicle and struck the front of Officer Whigham's unmarked squad car, causing damage to the front end of the vehicle. As ▇ reversed his vehicle, Officer Gaeta released his hands from the driver's side window and the window shattered. Officer Whigham heard the rear tires squeal and observed ▇ turning the front wheels, as he drove forward towards Officers Gaeta, Matheos and Dercola. Officer Gaeta and Matheos then discharged their weapons several times at ▇ According to Officer Whigham, the entire event occurred within a matter of seconds.

---

[3] Statement of Officer Schmidt (Att. 67), Page 12, Lines 23-27
[4] Statement of Officer Schmidt (Att. 67), Page 11, Lines 7-8
[5] Statement of Officer Whigham (Att. 47), Page 11, Line 18

INDEPENDENT POLICE REVIEW AUTHORITY                    Log #1073693/U# 15-02

Officer Whigham stated that [redacted] drove his vehicle forward and crashed into a building on the opposite side of the street. Officers Whigham, Dercola, Gaeta and Matheos approached and placed [redacted] into custody. Officer Whigham observed a large red stain on the t-shirt [redacted] was wearing and assumed that he was injured. Officer Whigham then called for an ambulance. (Atts. #46, 47)

In his statement to IPRA on 17 February 2015, **Witness Officer Matt Dercola** gave a similar account as that of Officer Whigham. Officer Dercola added that when he approached the vehicle, [redacted] immediately began to use his cellular phone. [redacted] then tried to pass the phone to Officer Dercola, but he refused to take it and continued to order [redacted] to exit the vehicle. Once Officers Gaeta and Matheos arrived on the scene, they ordered Mr. Golatte out of the vehicle several more times. Officer Gaeta then "put his hands on the window and then when he did that, that's when the offender put the car in reverse and gunned it" [6] and hit Officer Dercola's squad car. Officer Dercola added that he gave verbal directions, such as, "Don't do it," and "Stop,"[7] to [redacted] when he began driving his vehicle forward towards him and his fellow officers. (Atts. #48, 49)

In his statement to IPRA on 29 October 2015, **Involved/Accused Officer Jaime Gaeta** stated that he and his partner, Officer Matheos, were stopped earlier in the week prior to the incident by a concerned citizen who informed them about an individual selling narcotics in the area. The concerned citizen gave the description of [redacted] his residence and the vehicle he owned. According to Officer Gaeta, he and Officer Matheos drove down the block and observed a Lincoln Navigator[8] drive up and park in front of the residence identified by the concerned citizen. Officer Gaeta observed [redacted] exit his vehicle and run into the residence, leaving the vehicle running with the windows rolled down. Officer Gaeta and Matheos pulled up and approached the vehicle on foot. [redacted] then exited his residence, approached and asked the officers why they were around his vehicle. Officer Gaeta explained to [redacted] that they were checking on the vehicle to ensure it was not stolen. Officer Gaeta and Matheos then left the area.

According to Officer Gaeta, on 07 February 2015, he and Officer Matheos parked at 116th Street and Lafayette in an effort to conduct surveillance on residence on 115th Street that had been pointed out to them, which presumably was [redacted] residence, in furtherance of a narcotics investigation. Officer Gaeta observed [redacted] exit his residence and enter his vehicle. An unknown male approached [redacted] at which time they had a brief conversation and then conducted what Officer Gaeta believed to be a hand-to-hand narcotics transaction. When [redacted] drove his vehicle to 116th Street, Officers Gaeta and Matheos followed in their unmarked Ford Explorer. Officer Gaeta observed [redacted] stop his vehicle, at which time a second unknown male approached the vehicle and entered the front passenger door. [redacted] drove the vehicle for approximately one block down 116th Street and the unknown male then exited the vehicle.

Officer Gaeta contacted Officers Whigham and Dercola via cellular phone and instructed them to conduct a traffic stop on Mr. Golatte's vehicle. Officer Gaeta told the officers that he

---

[6] Statement of Officer Dercola (Att. 49), Page 20, Lines 28-31
[7] Statement of Officer Dercola, (Att. 49), Page 48, Line 27
[8] Through the investigation it was determined that [redacted] drove a 2004 Lincoln Aviator.

11

INDEPENDENT POLICE REVIEW AUTHORITY        Log #1073693/U# 15-02

wanted them to stop ▮▮▮ because he and Officer Matheos had prior contact with ▮▮▮ and he believed that ▮▮▮ knew why he was approached several days prior. Officers Whigham and Dercola arrived in the area and began to follow ▮▮▮ to 115th Street, while Officers Gaeta and Matheos began driving a different route to 115th Street.

Once Officers Gaeta and Matheos turned on to 115th Street, Officer Gaeta observed Officers Whigham and Dercola as they conducted the traffic stop of ▮▮▮ vehicle. According to Officer Gaeta, he and Officer Matheos were approximately one block away and observed that Officers Whigham and Dercola were having difficulty in getting ▮▮▮ to exit his vehicle. Officers Gaeta and Matheos decided to approach the vehicle to assist the other officers. Officer Matheos drove up and parked their unmarked squad car at a forty-five degree angle approximately six feet in front of ▮▮▮ vehicle. Officer Gaeta exited his squad car and observed ▮▮▮ to be irate, cursing and yelling while on his cellular phone.

Officer Gaeta approached the driver's side door and observed the driver side window rolled down approximately six inches. ▮▮▮ attempted to hand Officer Gaeta his cellular phone. Officer Gaeta placed both his hands on top of the driver's side window, announced his office and ordered ▮▮▮ to exit the vehicle. According to Officer Gaeta, it was then that ▮▮▮ grabbed the gear shifter and put his vehicle into reverse. As ▮▮▮ reversed his vehicle, Officer Gaeta pushed himself off the driver's side window, at which time the window shattered.

Officer Gaeta explained that ▮▮▮ reversed his vehicle, striking the front of Officer Whigham and Dercola's squad car. ▮▮▮ then turned the wheel and the front driver's side of the vehicle came towards Officer Gaeta. Officer Gaeta drew his firearm and began to retreat backwards into the street, distancing himself approximately two to three feet away from ▮▮▮ vehicle. Officer Gaeta related he was focused on the vehicle but was aware of oncoming traffic behind him when he fired his weapon. Officer Gaeta related he was in the middle of the street and "because of oncoming traffic…..it was a busy street, fearing for my life, and my partner's life,"[9] he discharged his weapon three times at ▮▮▮ as the vehicle came towards him. Officer Gaeta added that he couldn't move out of the way because of on coming traffic. According to Officer Gaeta, the incident "happened so fast" and he had only "seconds to react."[10] ▮▮▮ then drove his vehicle across the street, where he struck a building and came to a stop.

Officer Gaeta immediately ran over to secure the scene and approached ▮▮▮ vehicle from the front. Officer Gaeta observed ▮▮▮ exit the vehicle with a blood stain on the left side of his abdomen. Officer Gaeta then placed ▮▮▮ into custody. Officer Gaeta learned later in the evening that ▮▮▮ was a confidential informant for the Chicago Police Department. Officer Gaeta denied the allegation that he fired his weapon without justification as ▮▮▮ was attempting to flee. (Atts. #79, 80)

In a statement with IPRA on 29 October 2015, **Involved/Accused Officer Harry Matheos** provided an account of the events that was similar to that of his partner, Officer Gaeta. Officer Matheos related he parked five feet in front ▮▮▮ vehicle, at a forty five degree

---

[9] Statement of Officer Gaeta, (Att. 80), Page 19, Lines 13-16
[10] Statement of Officer Gaeta, (Att. 80), Page 42, Lines 6-7

12

angle. Officer Matheos exited his squad car and approached the driver's side of ▮▮▮▮ vehicle. Officer Matheos related he was standing to the left of Officer Gaeta by the front driver's side tire while Officer Gaeta was standing in front of the driver's side door. Officer Matheos ordered ▮▮▮▮ to exit the vehicle, at which time ▮▮▮▮ began to shout and scream that he didn't have to exit the vehicle. Officer Matheos related ▮▮▮▮ was on his cellular phone and that he attempted to hand the phone over to one of the officers. Again, ▮▮▮▮ was ordered to exit the vehicle and he responded, "Fuck this. Fuck you all."[11] ▮▮▮▮ then moved his right hand to the gear shifter and Officer Matheos ordered him to stop. ▮▮▮▮ placed his vehicle in reverse and backed his vehicle into the front of Officers Whigham and Dercola's unmarked squad car.

Officer Matheos believed that ▮▮▮▮ vehicle had struck Officer Whigham, who had been standing at the rear of the vehicle. Officer Matheos drew his firearm as he stood by the front driver's side of ▮▮▮▮ vehicle. ▮▮▮▮ turned the steering wheel of his vehicle and began to drive towards him. Officer Matheos heard the tires "screech" and observed the driver's side of the vehicle come towards him. Officer Matheos stated that he took a half step back, but did not have enough time to get out of the way of the vehicle coming towards him. Officer Matheos felt that he was in danger and fired two rounds into the driver's side window. Officer Matheos related that as the vehicle was coming at an angle, he "aimed right at the driver and fired two shots."[12] Officer Matheos heard Officer Gaeta fire his weapon, but his attention was on ▮▮▮▮ and the vehicle; he therefore did not observe Officer Gaeta fire his weapon. ▮▮▮▮ continued to drive his vehicle to the opposite side of the street where he struck a building and his vehicle came to a stop. Officer Matheos radioed "shots fired" and called for an ambulance. Officer Matheos observed ▮▮▮▮ exit his vehicle and scream, "You shot me. You shot me. I'm gonna sue you. You shot me."[13] ▮▮▮▮ was then taken into custody. (Atts. #87, 88)

**Chicago Police Department General Order G03-02-03 "Deadly Force"** which was in effect at the time of this event only authorizes an officer to fire into a moving vehicle to prevent death or great bodily harm to the sworn member or another person. The order specifically stated that when a sworn member is "confronted with an oncoming vehicle and that vehicle is the only force used against them, sworn members will move out of the vehicle's path." It is noted that this order was rescinded on 10 February 2015, and replaced with an updated General Order, which reinforces that sworn members are specifically prohibited from firing into a moving vehicle. (Att. #71)

---

[11] Statement of Officer Matheos (Att. 88), Page 16, Lines 13-14
[12] Statement of Officer Matheos (Att. 88), Page 36, Lines 12-13
[13] Statement of Officer Matheos (Att. 88), Page 17, Lines 10-11

13

INDEPENDENT POLICE REVIEW AUTHORITY                         Log #1073693/U# 15-02

**CONCLUSION AND FINDING:**

The Reporting Investigator recommends **Allegation #1** that **Officer Jaime Gaeta** fired his weapon upon ▇▇▇▇ without justification, as he was attempting to flee and posed no threat immediate threat to him, be **SUSTAINED**.

In his statement to IPRA, Officer Gaeta stated that he was attempting to pull ▇▇▇ driver side window down, when ▇▇▇ placed his vehicle in reverse and began to back up. Officer Gaeta stated that at that time, he pushed himself off of the window, causing it to shatter. Officer Gaeta stated that he retreated two to three feet into the street, away from ▇▇▇ vehicle, as he drew his firearm. Officer Gaeta stated that he observed ▇▇▇ strike the patrol car behind him, turn his steering wheel to the left, and began to move forward. Officer Gaeta cited the potential for oncoming traffic to block his further retreat away from ▇▇▇ vehicle. Officer Gaeta stated that he feared the vehicle was going to strike him and/or Officer Matheos and therefore fired his weapon at ▇▇▇.

An analysis of the evidence, specifically the bullet hole trajectories, clearly show that, at the time Officers Gaeta and Matheos fired their weapons, they were standing next to ▇▇▇ vehicle, as all of the rounds hit the driver side of his Lincoln Aviator either going directly into the side of the car or at an angle traveling from the back to the front of the car. The bullet path identified by Marker A shows that one bullet was fired almost directly into the driver's side window. The bullet paths identified by Markers B, C, and D show that those shots were fired into the vehicle from the driver's side in a back to front direction. This evidence suggest that, at the time the officers fired their weapons, they were positioned along the driver's side of the vehicle as it was traveling past them, not in front of the vehicle in harm's way.

By his own admission, Officer Gaeta had created distance between himself and the vehicle, and was continuing to expand that distance as he retreated into the street, away from the vehicle. Chicago Police Department General Order G03-02-03 "Deadly Force," which was in effect at the time of this event, only authorizes an officer to fire into a moving vehicle to prevent death or great bodily harm to the sworn member or another person. The order specifically states that when a sworn member is "confronted with an oncoming vehicle and that vehicle is the only force used against them, sworn members will move out of the vehicle's path."

As Officer Gaeta had time to react to ▇▇▇ manipulating the gear shift, reversing his vehicle, manipulating the gear shift again, turning his wheel, and then driving forward, it is reasonable to believe that he had the time and opportunity to move out of the vehicle's path, as mandated by the general order. In fact, Officer Gaeta himself explains that he was retreating from the vehicle. The physical evidence supports that Officer Gaeta was not in the path of the vehicle at the time he fired. The preponderance of the evidence leads the R/I to conclude that Officer Gaeta had moved out of the vehicle's path, yet still fired his weapon. Officer Gaeta's use of deadly force is therefore objectively unreasonable, and a violation of policy.

The Reporting Investigator recommends **Allegation #1** that **Officer Harry Matheos** fired his weapon upon ▇▇▇ without justification, as he was attempting to flee and posed no threat immediate threat to him, be **SUSTAINED.**

INDEPENDENT POLICE REVIEW AUTHORITYLog #1073693/U# 15-02

In his statement to IPRA, Officer Matheos stated that he was standing to the left of Officer Gaeta, next to the front driver's side tire. As they were ordering ▮▮▮▮▮ out of the vehicle, ▮▮▮▮▮ placed his vehicle in reverse and began to back up. Officer Matheos stated that due to the reversal of the vehicle, he was now located at the front driver's side bumper of the vehicle. Officer Matheos stated that he heard metal being smashed when ▮▮▮▮▮ reversed his vehicle. ▮▮▮▮▮ then turned his steering wheel and began to drive forward. Officer Matheos drew his firearm and fired two rounds into the driver's side window. Officer Matheos stated that he believed the vehicle struck Officer Whigham, who was standing at the rear of the vehicle and feared that the vehicle was going to strike him and/or Officer Gaeta and therefore fired his weapon at ▮▮▮▮▮

As outlined above, an analysis of the evidence, specifically the bullet hole trajectories, clearly shows that, at the time they fired, they were standing next to ▮▮▮▮▮ vehicle, as all of the rounds hit the driver side of his Lincoln Aviator, most of them going into the car at an angle from back to front.

By his own admission, Officer Matheos was no longer in front of the vehicle when he fired his weapon into the driver's side window. Chicago Police Department General Order G03-02-03 "Deadly Force," which was in effect at the time of this event, only authorizes an officer to fire into a moving vehicle to prevent death or great bodily harm to the sworn member or another person. The order specifically states that when a sworn member is "confronted with an oncoming vehicle and that vehicle is the only force used against them, sworn members will move out of the vehicle's path."

Because Officer Matheos had time to react to ▮▮▮▮▮ manipulating the gear shift, reversing his vehicle, manipulating the gear shift again, turning his wheel, and then driving forward, the circumstances suggest that Officer Matheos had the time and opportunity to move out of the vehicle's path, as mandated by the general order. The physical evidence supports that Officer Matheos was not in the path of the vehicle at the time he fired.

Officer Matheos also claims that he believed that ▮▮▮▮▮ car had struck Officer Whigham who had been standing at the rear of the vehicle before it moved. The CPD policy allows for the use of force when the officer or another is in imminent threat of danger, or to prevent the fleeing felon from preventing an arrest. However, it is not clear from the evidence that it was reasonable for Officer Matheos' to believe that Officer Whigham was in imminent threat of harm, or that he had been struck by the vehicle making ▮▮▮▮▮ a fleeing felon. However, even if Officer Matheos subjective belief was reasonable, his conduct would still fall outside of CPD policy which clearly prohibits firing at or into a moving vehicle under the circumstances described here.

As such, the preponderance of the evidence leads the R/I to conclude that Officer Matheos had moved out of the vehicle's path, yet still fired his weapon. Officer Matheos' use of deadly force is therefore objectively unreasonable, and a violation of policy.

INDEPENDENT POLICE REVIEW AUTHORITY      Log #1073693/U# 15-02

**FINDINGS:**

| | |
|---|---|
| Accused: | **Officer Jamie Gaeta, #17317** |
| Allegation #1: | **Sustained.** Violation of General Order 03-02-03, III, "Deadly Force" in that on 07 February 2015, at 1436 hours, in the vicinity of 310 West 115th Street, Officer Gaeta fired his weapon without justification, as ▉▉▉▉▉ was attempting to flee and posed no immediate threat. |
| Accused: | **Officer Harry Matheos, #21386** |
| Allegation #1: | **Sustained.** Violation of General Order 03-02-03, III, "Deadly Force" in that on 07 February 2015, at 1436 hours, in the vicinity of 310 West 115th Street, Officer Gaeta fired his weapon without justification, as ▉▉▉▉▉ was attempting to flee and posed no immediate threat. |

_[signature]_
Inv. William Abbruzzese #170

Approved:

_[signature]_
IPRA Supervisor

_[signature]_
Sharon R. Fairley
Chief Administrator, IPRA